UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROGER HAMILTON,<br>    Plaintiff,<br><br>v.<br><br>STARCON INTERNATIONAL, INC.,<br>and AMD OCCUPATIONAL MEDICAL<br>& SAFETY SERVICES, P.L.L.C.,<br>together with ADVANCED MEDICAL &<br>DIAGNOSTIC CENTER LLC, formerly<br>jointly conducting business as AMD<br>OCCUPATIONAL MEDICAL &<br>SAFETY SERVICES,<br>    Defendants. | §<br>§<br>§<br>§   CIVIL ACTION NO. 08-CV-2815<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM AND ORDER

Pending before the Court is the Motion for Summary Judgment of Defendants AMD Occupational Medical & Safety Services, P.L.L.C. and Advanced Medical & Diagnostic Center LLC ("AMD" collectively) (Doc. No. 46). For the following reasons, Defendants' Motion must be granted.

I.  BACKGROUND

The AMD Occupational Medical Services facility in Deer Park, Texas provides an array of services primarily related to pre-employment screening of applicants for local employers. (Def. Mot. at 2.) Plaintiff Roger Hamilton was accepted for a position of employment at Starcon International, Inc. ("Starcon"), subject to drug screening. (Pl. Compl., Doc. No. 15, ¶ 10.) Starcon Human Resources then requested that AMD Occupational Medical & Safety Service (now divided into two companies, AMD Occupational Medical Services, P.L.L.C. and Advanced Medical & Diagnostic Center

1

LLC), collect Plaintiff's urine sample and supply an air screen, pulmonary function test, and two categories of fitness tests. (Def. Mot. at 2.) Plaintiff's urine sample was accordingly collected by Angela Peyton, an AMD urine collector, on October 9, 2007. (Pl. Resp. ¶ 2.1.) That same day, Plaintiff's urine sample was picked up from the AMD facility by courier and taken to One Source Toxicology, a laboratory, for drug testing. (Def. Mot at 2.) On his fifth day of employment at the Starcon's Lyondell plant in La Porte, Texas, Plaintiff was escorted off the premises at the instruction of the Human Resources Department. (Pl. Resp. ¶ 2.5.) Upon immediately calling the Field Office Human Resources Department, Plaintiff was informed that his urine sample tested positive for illegal drugs. (*Id.* ¶ 2.6.) He was told that if he had questions about the test result, he should approach AMD. (*Id.*) When Plaintiff returned to AMD and requested a re-test, he was told by Deborah Graff, an AMD manager, that no re-test would be done and that all further questions should be directed to Starcon. (*Id.* ¶ 2.7.) Starcon, purportedly as per industry practice, reported Plaintiff's drug test failure to ASAP and DISA, Inc., systems that alert prospective employers of an employee's positive test. (Pl. Compl. ¶ 10 (explanation of acronyms not provided).) On October 16, 2007, Plaintiff took an independent urine test administered by Baypoint Occupational Medical. (*Id.* ¶ 2.9.) That test, also conducted by One Source Toxicology, indicated that Plaintiff's sample was free of any illegal substances. (*Id.*)

Prior to these events, on September 28, 2007, Plaintiff accepted another short-term job that required him to submit to a urine exam as a condition of employment. (Pl. Resp. ¶ 2.1.) The results of that urine exam showed that Plaintiff tested negative for all illegal substances. (*Id.*)

Plaintiff contends that the sample administered by AMD must have falsely tested positive because two other samples, one taken before and another taken days after the Starcon sample, tested free of illegal drugs. This case was originally brought against both AMD and Starcon. This Court dismissed Plaintiff's Title VII employment discrimination claims against Starcon. (Doc. No. 38.) Subsequently, the parties agreed to dismiss Starcon from this case. (Doc. No. 42.) Thus, all that remains are the state law counts against AMD. Plaintiff alleges that AMD mishandled Plaintiff's urine sample, and that it fraudulently misrepresented false positive drug test results, negligently refused to re-test the urine sample, negligently trained, supervised, and retained employees, tortiously interfered with an employment contract and/or prospective business relationship, and added and abetted in a civil conspiracy. AMD now moves for summary judgment as to all remaining claims.[1]

## II.  LEGAL STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

[1] As a preliminary matter, Plaintiff objects to AMD's Motion filing in its entirety. One of the factual premises of AMD's Motion is that it only collected the urine sample, while the testing was done by One Source Toxicology. Plaintiff asserts that he only learned of this fact in July of 2009, 10 months after his Complaint was filed, and that AMD's withholding of this information and subsequent Motion for Summary Judgment amounts to "trial by ambush." The Court rejects this objection as having no legal basis. Unless Plaintiff can show that AMD actively worked to conceal this information from Plaintiff, an allegation not made here, there is no legal reason why AMD's Motion is invalid. Furthermore, that the chain of custody and control form signed by plaintiff *and* the form indicating the results of Plaintiff's urine sample both identified One Source Toxicology Laboratory further suggests that Plaintiff was on notice of this lab's involvement at the start of this litigation.

law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *see, e.g., McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts.'" (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III. GENUINE ISSUE OF MATERIAL FACT

Plaintiff contends that an issue of material facts remains as to whether AMD erred in its collection, handling, identification, or transportation of Plaintiff's urine sample that was later tested by One Source Toxicology. More specifically, Plaintiff maintains that there is a legitimate dispute as to whether the sample provided to One Source Toxicology by AMD was in fact Plaintiff's sample. (Pl. Resp. at 11.)

The evidence presented by AMD in its Motion for Summary Judgment includes a chain of custody and control form containing Plaintiff's signature as the donor. According to the instructions, the donor signs the form after a urine collector affixes the identifying seals to the bottles, dates the seals, and the donor initials the seals. (Def. Mot. Ex. 1.) In addition, AMD includes an affidavit of Ted. F. Barnowski, a founder of AMD,

4

testifying that Plaintiff's urine sample was collected pursuant to the federal and private regulations that ensure the integrity of urine specimens, and that, after One Source Toxicology took possession of the sample for testing, AMD neither had possession of it nor received the results of the test. (Def. Mot. Ex. B.) AMD also includes a copy of the Urine Specimen Collection Guidelines issued by the United States Department of Transportation. (Def. Mot. Ex. E.) Finally, AMD includes an affidavit by Angela Peyton, the AMD employee who took Plaintiff's sample, testifying that the surveillance video footage documenting her interaction with Plaintiff indicates no departure from the proper urine collection procedures, and that, once the specimen had been collected, it was placed in the appropriate container to be transported to One Source Toxicology. (Def. Mot. Ex. G.) Affixed to her affidavit is Ms. Peyton's Certificate of Completion indicating that she has completed the necessary training for urine collection. (*Id.*)

The evidence presented by Plaintiffs includes the results of the urine test taken before and after the one administered by AMD, an affidavit of Plaintiff stating that he does not do drugs and believes the results of his test are false, and a letter written from AMD's counsel to Plaintiff's indicating that AMD did not perform sample testing but rather sent the sample to a lab to be tested. (Pl. Resp. Exs. A-D.) Thus, Plaintiff's position that AMD mishandled his sample is supported by the fact that Plaintiff tested negative in other urine tests, and that Plaintiff testified under oath that he believes that the results of the urine test administered by AMD were incorrect.[2]

---

[2] Each party has raised various objections to evidence attached to the opposing side's brief. As to Plaintiff's contention that several of AMD's exhibits were not provided to Plaintiff during discovery, AMD asserts that these documents were in fact turned over in June of 2009. Unless Plaintiff reasserts to this Court that he was not given these documents, this Court will assume that counsel for AMD fulfilled their ethical obligations in turning these documents over to Plaintiff. The Court has noted the objections made by both parties that the affidavit(s) submitted by the other party are self-serving, speculative, and irrelevant, and has weighed all information contained in these affidavits accordingly. Finally, as to AMD's contention that

5

The Court finds that the evidence presented does not create a genuine issue of fact as to whether AMD mishandled Plaintiff's urine sample or gave an incorrect sample to the laboratory. First, Plaintiff provides no actual evidence of negligence or wrongdoing on the part of AMD, other than his belief that his test result was incorrect and his assertion that he does not use illegal drugs. Plaintiff's subjective belief alone is insufficient to support his allegations. *Cf. Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (rejecting plaintiff's reliance on subjective belief regarding defendant's discriminatory intent). Plaintiff has no personal knowledge as to how or in what way his sample might have been mishandled, and thus his belief, without more, cannot constitute evidence creating a genuine issue of fact. Unsupported speculation is not competent summary judgment evidence. F.R.C.P. 56(e)(1); *see, e.g., McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

Secondly, Plaintiff argues that, because he tested negative for illegal substances in urine tests administered before and after the one handled by AMD, AMD must have mishandled the sample that it collected. However, the evidence presented by Plaintiff is circumstantial at best, and the Court cannot draw any inferences from it that might support Plaintiff's case. Plaintiff provides no evidence or testimony indicating how the results of the other urine samples are related to one administered by AMD. It is this Court's understanding that urine samples can legitimately test positive for drugs one day, and then subsequently test negative once the substances have passed through the individual's system. Had Plaintiff provided any evidence indicating that it is impossible

---

several statements contained in Plaintiff's affidavit are hearsay under Federal Rule of Evidence 802, the Court notes that it did not consider these statements in ruling upon this Motion, and therefore need not rule upon this objection.

for urine tests taken within one week of each other to yield different results, as they did in this case, or even that these facts make the accuracy of his test significantly less likely, the Court would have construed this evidence in favor of Plaintiff. However, Plaintiff provides no evidence whatsoever as to how his other urine tests have any bearing upon whether AMD mishandled his sample on October 9, 2007, other than to simply point out that the tests yielded different results. All evidence presented by AMD indicates that it followed the proper procedures in collecting and administering Plaintiff's sample, including the notable fact that Plaintiff signed the chain of custody form indicating that his samples were properly labeled and sealed. Because Plaintiff provides no direct evidence to counter the weight of this evidence, this Court cannot find that genuine issue of fact remains as to whether AMD mishandled or tampered with Plaintiff's sample. We now turn to the specific claims for relief in Plaintiff's Complaint to assess whether, as a matter of law, AMD is entitled to summary judgment.

IV.   **CAUSES OF ACTION**

    A.   **Fraud**

Plaintiff alleges that AMD made a fraudulent misrepresentation to Plaintiff, Plaintiff's peers, and Plaintiff's employer by falsely reporting and/or manufacturing positive test results. To recover on an action for fraud, the party must prove that: "(1) a material representation was made; (2) it was false; (3) when the speaker made the representation he knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made it with the intention that it should be acted upon by the party; (5) the party acted in reliance upon it; and (6) the party thereby suffered injury." *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997);

7

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, --- F.3d ---, 2009 WL 930055, at *10 (5th Cir. Apr. 8, 2009). For allegations of fraud, FED. R. CIV. P. 9(b) requires that a party "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). That is, the plaintiff must plead the "who, what, when, where, and how" of the alleged fraud. *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *U.S. v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

In this case, AMD did not in fact generate the positive results from Plaintiff's urine sample, as it served only as the sample collector. Therefore, AMD made no representations whatsoever as to the results of the test. Furthermore, as described above, Plaintiff produces no evidence suggesting that AMD misrepresented the sample presented to One Source Toxicology as Plaintiff's sample through negligence or tampering. As such, elements one and two of a fraud claim are negated and AMD is entitled to summary judgment as to this claim.[3]

### B.    Libel and Slander

In its Response, Plaintiff moves to dismiss the libel claim against AMD. (Pl. Resp. at 12.) The Court grants this Motion and hereby dismisses the libel claim.

As to slander, Plaintiff alleges that AMD committed slander by orally communicating false statements about Plaintiff to Starcon. Slander is an oral form of defamation. Under Texas law, the elements of defamation are: (1) the defendant

---

[3] AMD also avers in their Motion that Plaintiff failed sufficiently to plead a fraud cause of action under Federal Rule of Civil Procedure 9(b). However, as AMD did not raise this objection through a Rule 12(b)(6) motion to dismiss, and this Court awards AMD summary judgment based on the evidence, the Court declines now to reach the question of whether the claim was sufficiently pled.

8

published a statement of fact; (2) that was defamatory concerning the plaintiff; (3) while acting with negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

In this case, the evidence indicates that the results of Plaintiff's drug test were originally communicated to Starcon by One Source Toxicology, not AMD. (Def. Mot. Ex. E.) Furthermore, there is no evidence indicating that any party, including AMD, was negligent as to the truth of the fact that Plaintiff's sample tested positive, particularly since the evidence shows that AMD followed the proper procedures in creating the sample. Therefore, because the elements of defamation are negated by the evidence, AMD is entitled to summary judgment as to this claim.[4]

### C.     Negligence

Plaintiff alleges that AMD was negligent by failing to comply with Plaintiff's request to have his urine sample re-tested. To prevail on a negligence cause of action, the plaintiff must establish (1) the existence of a duty; (2) a breach of that duty; (3) and damages proximately caused by the breach. *Western Investments, Inc. v. Urena, 162 S.W.3d 547, 550* (Tex. 2005). Duty is a question of law for the court to decide, based upon the facts surrounding the occurrence in question. *Texas Home Management, Inc. v. Peavy*, 89 S.W.3d 30, 33 (Tex. 2002). In performing urine collection services for Plaintiff, AMD owed Plaintiff a general duty to exercise reasonable care to avoid

---

[4] AMD also challenges this claim on the grounds that it is barred by the applicable statute of limitations. AMD argues that the positive test results at issue in this case were printed on Oct. 15, 2007, and that Plaintiff did not file claims against AMD until Nov. 21, 2008 in violation of the one-year limitations period on defamation claims under Texas law. This Court rejects this argument. Although Plaintiff filed an amended complaint correctly naming AMD on Nov. 21, 2008, its original complaint alleging defamation by AMD Occupational Medical & Safety Services was filed in September of 2008. Therefore, there is no violation of the statute of limitations.

foreseeable risks. *See Kroger Co. v. Elwood*, 197 S.W.3d 793, 794-95 (Tex. 2006); *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987).

This Court holds that, as a matter of law, compliance with Plaintiff's request for a re-test did not fall within AMD's duty of reasonable care. As an initial matter, AMD could not have re-tested the initial sample taken from Plaintiff, as this sample was no longer in its possession and it was not in the scope of AMD's responsibilities to perform the actual test. However, assuming it was within AMD's authority to collect another sample from Plaintiff to be sent to a lab for testing, Plaintiff provides no indication that compromised urine samples were a regular occurrence such that a reasonable sample collection service would have honored Plaintiff's request. Plaintiff also provides no evidence that testing a second urine sample taken days after an initial test is a valid means of guarding against the risk that the initial sample was compromised. Therefore, because this Court finds that, as a matter of law, AMD owed Plaintiff no duty to comply with his request for a urine sample re-test, AMD is entitled to summary judgment as to this claim.[5]

### D. Negligent Hiring, Supervision, Training, and Retention

Plaintiff alleges that AMD failed to properly screen, evaluate, investigate, or take any reasonable steps to determine whether Deborah Graff or other employees were unfit, incompetent, or posed a danger to third parties. In Texas:

---

[5] Although not included in his Complaint, Plaintiff alleges in his Response to this Motion that AMD was also negligent in not informing Plaintiff that he should contact One Source Toxicology in reference to disputes over his urine test results. Even assuming that this allegation was timely raised, because both the chain of custody and control form and the test results identify One Court Toxicology Laboratory has having performed the urine test in question, the Court does not find that AMD was negligent in failing to inform Plaintiff that he should contact One Source Toxicology. (Def. Mot. Exs. A and E.) Plaintiff also suggests that AMD was negligent as indicated by the fact that it might have provided One Source Toxicology with the wrong sample. However, as discussed above, there is no genuine issue of material fact as to whether AMD incorrectly handled Plaintiff's sample. Therefore, the Court rejects this claim as well.

> an employer has a duty to adequately hire, train, and supervise employees. The negligent performance of those duties may impose liability on an employer if the complainant's injuries result from the employer's failure to take reasonable precautions to protect the complainant from the misconduct of its employees.

*Garcia v. Allen*, 28 S.W.3d 587, 592 (Tex. App.—Corpus Christi 2000, pet. denied). An employer cannot be held liable for negligent supervision unless the alleged misconduct of its employees was an actionable tort. *See id.*

Plaintiff provides no evidence that AMD was negligent in choosing to hire Deborah Graff, Angela Peyton, or any other AMD employee. AMD asserts that all employees are required to submit a formal application and undergo training as to how to collect samples pursuant to federal guidelines. (Def. Mot. at 17.) In support of this, AMD provides the Certificate of Completion of training issued to Angela Peyton. (Def. Mot. Ex. G.) Plaintiff offers nothing to refute these facts or to suggest that AMD failed to take necessary precautions to ensure that Plaintiff was not harmed by AMD employees' misconduct. Furthermore, as described above, Plaintiff also fails to show that any AMD employee in fact committed an actionable tort against him, as neither Ms. Peyton nor Ms. Graff violated a duty of care to Plaintiff. As such, AMD is entitled to summary judgment as to this claim.

### E. Tortious Interference with Contract

Plaintiff alleges that AMD willfully interfered with his employment contract with Starcon through manufacturing positive test results. To prevail on a claim of tortious interference, Plaintiff must show (1) the existence of a contract; (2) defendant's willful and intentional inference with that contract; and (3) the interference proximately caused

(4) actual damage or loss to plaintiff. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).

Here, Plaintiff has not shown the elements of a tortious interference claim, as Plaintiff has failed to show any wrongdoing on the part of AMD in handling Plaintiff's urine sample, let alone any intentional wrongdoing. Therefore, AMD is entitled to summary judgment as to this claim.

### F.     Tortious Interference with Prospective Business Relationship

Plaintiff alleges that AMD intentionally and willfully inferred with his prospective business relationship with Starcon in order to deprive Plaintiff of the benefits of this relationship. However, as stated above, because Plaintiff does not create a fact issue as to whether AMD did anything to interfere with his relationship with Starcon, AMD is entitled to summary judgment as to this claim.[6]

### G.     Aiding and Abetting, Concert of Action, and Conspiracy

Plaintiff also maintains that AMD is liable for the torts committed by Starcon under the theory of aiding and abetting. Plaintiff pleads three types of aiding and abetting: 1) assisting and encouraging; 2) assisting and participating; and 3) concert of action. *See* RESTATEMENT (2D) OF TORTS § 876 (1979). Plaintiff also alleges that Starcon and AMD acted in concert and "participated in civil conspiracy." Participation in a tort through aiding and abetting can impose liability on a third-party for the underlying tort. *Kinz Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942). Civil conspiracy is generally defined as "a combination of two or more persons to accomplish

---

[6] In its Motion, AMD also argues that Starcon and Plaintiff had already established an at-will employment contract such that it could not be a prospective business relationship. The Court notes that a negative drug test could be construed as a condition precedent to the formation of an actual employment relationship between Starcon and Plaintiff, thereby making this relationship prospective. However, because Plaintiff has not shown interference of any kind, the Court declines to conclusively decide this question.

an unlawful purpose, or to accomplish a lawful purpose by unlawful means. It is not the agreement itself, but an injury to the plaintiff resulting from an act done pursuant to the common purpose that gives rise to the cause of action." *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex. 1979).

As an initial matter, this Court recognizes that Plaintiff's pleadings with regard to these derivative theories of liability are woefully deficient. In his Complaint, Plaintiff merely lists the three theories of aiding and abetting and states that AMD and Starcon acted in concert and participated in civil conspiracy. Plaintiff gives no further factual support to these contentions, fails to list the elements of these claims, and further fails to clearly identify the underlying tortious acts for which AMD allegedly acted with Starcon. This cannot provide AMD fair notice of the allegations being made against it. To sufficiently state a claim, "a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Even ignoring these pleading deficiencies, the Court finds that AMD is entitled to summary judgment with respect to these claims. This Court has now awarded AMD judgment as to all possible underlying torts mentioned in Plaintiff's Complaint in which AMD may have aided and abetted Starcon or acted in concert with Starcon, and has further found that Plaintiff has failed to raise a material fact issue as to whether AMD mishandled Plaintiff's sample, whether intentionally or negligently. As Plaintiff names no

additional underlying torts in his pleadings, this Court finds that AMD cannot be principally or derivatively liable to Plaintiff.

## V. CONCLUSION

Because there are no genuine issues of material fact and AMD is entitled to judgment as a matter of law on all remaining claims, Defendant AMD's Motion for Summary Judgment (Doc. No. 46) is hereby **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** this 8th day of December, 2009.

                                            KEITH P. ELLISON
                                            UNITED STATES DISTRICT JUDGE